IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OHIO
TOLEDO DIVISION

FILED
JUL 06 2020
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

DANIEL EUGENE MORRIS )
    Petitiioner, )
 )
 )
vs. ) Case No. 3:16CR-35-02
 )
UNITED STATES OF AMERICA )
    Respondent. )

\*\*\* \*\*\* \*\*\* \*\*\*

**MOTION TO CONSIDER PETITIONER'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. 3582(C)(!)(A) AND 4205(g)**

COMES NOW, Petitioner Daniel Eugene Morris, by and through In Propria Persona (Pro se), moves this Honorable Court to consider his Motion for Compassionate Release/Reduction in Sentence as it pertains to his particular underlying medical conditions and in accordance with 18 U.S.C. 3582(c)(1(A) and 4205(g), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018.

SUMMARY

Petitioner states that under the language of the recently enacted CARES Act provisions that deal with the early release of Inmates to Home Confinement prior to completion of their sentence, Congress and the President of the United States of America, recognized the "extraordinary and extremely hazardous health concerns facing prioners confined in the Federal Penal Institutions." In response to the COVID-19 Pandemic, the CARES Act changed prior Law that required that to be released to Home Confinement, an Inmate must have no more than 10-percent or 6-months remaining, whichever is less, to be served on their original sentence. The CARES Act removed the time restriction on release to Home Confinement.

(1)

Courts reviewing this Law and current state of health in the World, also recognized the importance of allowing immediate release to Home Confinement, regardless of the time remaining on their sentence. In the case: **United States v. Sawicz, 08-CR-287(E.D.N.Y. 2020)**, "In the allowing the release of a prisoner, who interestingly was a sex-offender and had not served much of his original sentence, stated 'Undue delay, if it in fact results in catastrophic health consequences, Courts can justify waiving the Adminstrative Remedy Exhaustion Requirements...'" Petitioner avers that he requested relief from the Warden at the Federal Medical Center Lexington ("FMC Lexington) in August, 2019; therefore, he is proper before this Court. See, **Exhibit A.**

At issue was that the Government, through objection by the Bureau of Prisons ("BOP") to release the Inmate where the Inmate had put in a written request for release under the Compassionate Release pursuant to the FSA, as amended, because the Warden and BOP had not formally ruled on the Inmates's request. The Court; however, recognized the importance in this crucial time where we as a Human race are facing a deadly virus in COVID-19, that the specific circumstances of eligible Inmates overrides internal BOP policy and procedures. Petitioner contends that he was denied Compassionate Release by the BOP in February, 2020 due to a time served requirement.

To deny Inmates, who are otherwise eligible to be released under the CARES Act and for Compassionate Release based upon a time served guideline that does not exist in the Law is "arbitrary and capricious." It also violates the Civil Rights of the Inmate and is certainly an Obstruction of Justice.

Petitioner contends that the BOP ruling flies in the face of the First Step Act's amendment to 3682(c)(1)(A), which allows Courts to consider and GRANT reductions even in the face of an adverse or unresolved BOP determination concerning whether a prisoner's case is "extraordinary and compelling." See, **United States v. Cantu-Rivera**, No. H-89-204, 2019 WL2578272 at * 1(S.D. Tex. June, 2019) (Citing 18 U.S.C. 3582(c)(1)(A). A Court can modify a Defendant's sentence if it finds "extraordinary and complelling reasons" warrant such a reduction and that such a reduction is consistent with the Sentencing Commission's Policy Statements.

Section 3582(c)(1)(A) does not specifically define "extraordinary and compelling reasons." However, the United States Sentencing Guidelines provide that "extraordinary and compelling reasons" exist when any of the following circumstances set forth below are present:

A) Medical Condition of Defendant
   (i) The Defendant is suffering from a terminal illnes (i.e., a serious and advance illness with an end of life trajectory). A specific prognosis and advance life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include: Metastatic Solid Tumor Cancer, Amyotrophic Lateral Sclerosis (ALS), End-Stage Organ Disease, and advance dementia;

   (ii) The Defendant is ...
      (i) Suffering from a serious physical or mental condition;

   (iii) Suffering from a serious functional cognitive impairment, or;

   (IV) Experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the Defendant to provide self-care within the environment of a correctional facility and from which he/she is not expected to recover.

B) Age of Defendant...
   The Defendant...
   (i) is at least 65-years old;

   (ii) is experiencing a serious deteriorating physical or mental health because of the aging process; and

   (iii) has served at least 10-years or 75-percent of his/her term

(3)

of imprisonement, whichver is less;

C) Family circumstances...
   (i) The death or incapacitation of the caregiver of the Defendant's minor child or children;
   (ii) The incapacitation of the Defendant's spouse or registered partner when the Defendant would be the only available caregiver for the spouse or registered partner;

D) Other Reasons...
   As determined by the Director of the BOP, there exist in the Defendant's case an "extraordinary and compelling reasons" described in sub-divisions (A) through (C). U.S.S.G. 1B1.13, App. Note 1.

Petitioner further avers that he has several chronic medical issues not only physical, but also mental. These issues have been diagnosed by BOP Medical Health Staff, which include but are not limited to the following:

- Advanced Stage COPD w/Emphezyma
- Congestive Heart Failure
- Coronary Heart Disease
- Hypertension
- Borderline Diabetic
- COVID-19 Infection

On or about May 13th, 2020 Petitioner was tested for the COVID-19 virus, the results were that Petitioner had in fact contracted this deadly COVID-19 virus, the results were that Petitioner had in fact contracted this deadly COVID-19. This test was confirmed by the University of Kentucky Medical Center ("UKMC"). Petitioner was admitted to UKMC on May 14th, 2020 due to complications from COVID-19, and he was released from UKMC one-week later. See, **Exhibit B.**

Petitiioner's contracting of the deadly COVID-19 virus could and should have been prevented; however, the Warden (Francisco Quintana) at the Federal Medical Center Lexington violated the specific testing provisions of the CARES Act; as well as, guidelines issued by the Center for Disease Control and Prevention ("CDC").

(4)

The CDC has issued specific guidelines on how to stop the radical spread of the COVID-19 virus. The Warden and Staff at FMC Lexington violated the protocols by not testing Staff and Inmates. Furthermore, by moving and/or transferring symptomatic and asymptomatic Inmates to different Housing Units further exacerbated the exposure to the deadly virus. According to the CDC, people infected must be put in isolation for 14-days. However, at FMC Lexington all infected Inmates are being housed in a Dormitory Unit, which Petitioner is housed in an open area that does not conform to the six (6) feet apart guideline.

FMC Lexington is not following the recommendations from the CDC. Therefore, the facility is faced with an uncontrollable outbreak of COVID-19. Suspending testing of Inmates is also skewing the actual number of new infections. Further, the Lexington/Fayette County Health Department is being denied access to the facility for the purposes of compliance; however, the Warden is denying access. Since COVID-19 has taken FMC Lexington hostage, there are (280) confirmed Inmate infections, (30) confirmed Staff infections, (10) related deaths, and (16) Inmates on Ventilators. These numbers will continue to increase at a rapid pace once testing resumes. See, http://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.

Because of the unforeseen actions by the Warden and his Staff at FMC Lexington, COVID-19 has been and will continue to flourish unabated throughout the facility, which is also a violation of Petitioner's Constitutional Rights and the BOP's own policy in keeping the Petitioner SAFE from all harm.

The particular and specific conditions that Mr. Morris has experienced at FMC Lexington are extremely concerning.[1] Mr. Morris and over 200 other inmates there have tested positive for the coronavirus.[2] Six inmates have died to date that are atributable to the virus. and more than 300 are in recovery.[3] These numbers place FMC Lexington as the fourth-highest BOP facility for coronavirus cases.[4] Thus it is clear that the efforts the BOP took to protect the inmates at FMC Lexington from the spread of coronavirus have failed.

Although Mr. Morris has so far survived coronavirus, he remains very much at risk. There is no evidence that people who have recovered from COVID-19 will not be infected again. According to the CDC it is not yet known whether survivors of COVID-19 will emerge with immune protection.[5]

Specific to Mr. Morris's health conditions are his issues with his heart functioning, as he was told prior to entry into the federal prison, where he self surrendered, he was assured, to the best of his knowledge, that the BOP had made a promise to his court such that the BOP would provide Cardio Rehabilitation and Pulmonary Rehabilitation, as well as a pacemaker for his heart, which he was told his life depended upon, for him to survive prison. Mr. Morris sits here today more than 18 months later, with no physical therapy for his heart and pulmonary systems; and Mr. Morris has been told by University of Kentucky Heart Specialists that he would not survive the surgery, and therefore the BOP doctors have refused him the already promised surgery and rehabilitations – thus placing him at even higher risk of complete cardio-pulmonary collapse. These heart and lung conditions are debilitating, declared so by Mr. Morris' heart specialists in Ohio, yet being incarcerated and locked in a prison which effectively severs his ability to obtain care surgeons in Toledo Ohio are setup to perform on a regular basis – is being denied by the same BOP who promised they would be done, to Mr. Morris' and the court's satisfaction. Is it any wonder that Mr. Morris has been repeatedly denied

(6)

compassionate release by this same Warden, Francisco Quintana, and by the Warden's staff? The BOP is in breach of its charter to care for inmates, and especially elderly and infirm inmates the courts place in their care.

Mr. Morris is supposed to be housed in an air-filtered and air-conditioned housing, as heat and heavy humidity exacerbate his already fragile health conditions. He is on 4 liters of oxygen per minute continuously, as his lungs have lost their full capacity due to his advancing COPD. He was placed in an air-conditioned wing to accomodate the heat and humidity the strain of which stresses his heart and lung functions. And he was to have a pacemaker implanted to control the erratic beat of his heart. This is what precipitated the Congestive Heart Failure Mr. Morris has had to endure while incarcerated. COVID, and the prison's COVID Pandemic response protocols changed any balance Mr. Morris had in his health care.

The actions of the Warden and his staff resulted in the constant relocation of COVID-Positive inmates, such that Mr. Morris was removed from his air-filtered housing, and placed in another housing unit that has neither filtered air or air-conditioning. Thus Mr. Morris is further suffering as the Summer comes on and the humidity rises. To date Lexington Kentucky has experienced its first half-dozen days of temperatures in the near 90's and with as much as 100% humidity. FMC-Lexington has failed in its obligation to protect its inmates, and has failed Mr. Morris repeatedly denying him Compassionate Release. As an elderly 72 year old male, Mr. Morris qualifies for Compassionate Release by many aspects of the Acts.

---

Footnotes:
1. Christian Boone, "Employee's Death Raises Questions About Conditions Inside Federal Pen, ATLANTA J. CONS. (May 4, 2020), available at https://www.ajc.com/news/local/employee-death-raises-questions-about-conditions-inside-federl-pen/3Enh61w6Di8rcT9YuY5PPK/.
2. COVID-19 Cases, BOP ONLINE available at https://www.bop.gov/coronavirus/
3. Id.; 4. Id.
5. Clinical Questions About COVID-19:Questions and Answers, CDC ONLINE (May 12, 2020) available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (Last visited May 29, 2020).

(7)

Thusly, Petitioner contends that by contracting the deadly COVID-19 virus, it qualifies him for Compassionate Release and/or Reduction in Sentence. and the Petitioner further contends that the enumerated subdivisions of Application Note 1 (D) suggest that Petitioner's positive test results, hospitalization, and underlying medical conditions satifies the "extraordinary and compelling reasons." That being said, the Petitioner requests that this Honorable Court GRANT this Motion.

## CONCLUSION

Based on the foregoing, Petitioner requests that this Honorable Court GRANT this Motion for Compassionate Release due to his serious health problems, contracting of the deadly COVID-19 virus, and the grave potential for re-inection, which can have deadly consequences for the Petitioner.

WHEREFORE, the Scales of Justice exposes your sight to help you to remember to weigh your proceedings with a sound mind and integrity, so that the ends of Justice is served. For the reasons contained herein, Petitioner PRAYS this Honorable Court GRANT him relief or on the alternative Appoint Counsel to resolved the same.

Respectfully submitted,

DATE: June 12, 2020

*Daniel E. Morris*
DANIEL EUGENE MORRIS
REG. NO. 63853-060
FEDERAL MEDICAL CENTER LEXINGTON
P.O. BOX 14500
LEXINGTON, KENTUCKY 40512

------------------------------------------------------------

C E R T I F I C A T E   O F   S E R V I C E

------------------------------------------------------------

I, DANIEL EUGENE MORRIS, hereby declare and affirm under penalty of perjury and in accordance with 28 U.S.C.S. §1746 that the foregoing is a true and accurate document to the best of my understanding and knowledge; a true copy of which has been submitted to the Court for filing and service upon the office of the United States Attorney if and where necessary, once scanned and entered into the Court's Electronic Document Filing system, satisfies Rule 5.

This Document was placed in the Prison Legal Mail Room, for posting in the United States Mail, given to Prison Officials, on the date signed below. Prepaid United States Postage was affixed and proper address and label was affixed as required by FBOP Institutional Policies.

This document is properly mailed and filed according to the Prison Mailbox Rule. (See <u>Houston v. Lack,</u> 487 US 101 (1988))

_Daniel C Morris_           6-29-20

Mr. Daniel Eugene Morris        DATE OF MAILING

# 63853-060
FEDERAL MEDICAL CENTER
POST OFFICE BOX 14500
LEXINGTON, KY 40511

MR. DANIEL EUGENE MORRIS
# 63853-060
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512


7007 0710 0000 0274 9237



OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
FEDERAL COURTHOUSE
Carl B Stokes United States Courthouse
810 West Superior Avenue
Cleveland OH 44113-1830

Legal Mail
Special Mail

